

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSEPH ST. ONGE and          :
MICHAEL ST. ONGE             :
                             :
VS.                          :          NO. 3:01CV1506(SRU)
                             :
TROOPER FABIAN (#1302) and   :
TROOPER LALLO (#1402)        :          NOVEMBER 1, 2003

## JOINT TRIAL MEMORANDUM

**(1)    TRIAL COUNSEL**

**For the Plaintiffs:**

John R. Williams
Norman A. Pattis
Timothy J. Mahoney
Christy H. Doyle
Elizabeth Brooks
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com

**For the Defendants:**

Stephen R. Sarnoski
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
860.808.5450
Fax: 860.808.5591

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3) and

1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States

Code.

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    NATURE OF CASE**

This is a federal civil rights action filed by the plaintiffs, Joseph and Michael St.

Onge, against the defendants, Connecticut State Police Troopers Thomas

Fabian and Edward Lallo.  The plaintiffs claim that the defendants used

unreasonable force upon them during the course of their arrests at the Hilltop Inn

in North Stonington, Connecticut, on the night of April 24, 2001, in violation of

their rights under the Fourth Amendment to the United States Constitution.  The

defendants deny these allegations.

**(5)    STIPULATIONS OF FACT AND LAW**

a.  At all times during the course of events related to this lawsuit, the

defendants, Troopers Thomas Fabian and Edward Lallo, were sworn officers of

the Connecticut State Police, and were acting in the course of their official duties

and under color of state law.

**(6)    PLAINTIFF'S CONTENTIONS**

The plaintiffs contend that they were taken from their motel room and assaulted

by the defendants while the defendants were investigating a minor motor vehicle

complaint at the Hilltop Inn on Route 2 in Stonington, Connecticut, during the

evening of April 24, 2003.

**(7)    DEFENDANT'S CONTENTIONS**

The defendants deny assaulting the plaintiffs and assert that they used only that

degree of force which was reasonably necessary considering all of the circum-

stances known to them at the time of the incident.

**(8)    LEGAL ISSUES**

None.

**(9)    VOIR DIRE QUESTIONS**

Attached hereto.

**(10)    LIST OF WITNESSES**

**For the Plaintiffs:**

A. The plaintiff, Joseph St. Onge, Lowell, Vermont, will testify

concerning all of the events in this case and to the damages he suffered.

B. The plaintiff, Michael St. Onge, Lowell, Vermont, will testify

concerning all of the events in this case and to the damages he suffered.

C. Attorney Cheryl Heffernan, New Haven, Connecticut, may testify concerning proceedings in the plaintiffs' criminal prosecutions at New London.

D. Patrick Levantino, Hilltop Motor Inn, Stonington, Connecticut, may testify concerning the assault upon the plaintiffs.

### For the Defendants:

A. Trooper Thomas Fabian, Connecticut State Police, 1111 Country Club Road, Middletown, Connecticut. Trooper Fabian is the arresting officer. He will testify as to his actions and observations during the course of the investigation which preceded the arrest of the plaintiffs.

B. Trooper Edward Lallo, Connecticut State Police, 1111 Country Club Road, Middletown, Connecticut. Trooper Lallo was assigned to assist Trooper Fabian during the course of the investigation involving the plaintiffs. He will testify as to his actions and observations during the course of the investigation which preceded the arrest of the plaintiffs.

C. Amy Ziegra, 53 Cottage Street, Groton, Connecticut. Ms. Ziegra was the hotel clerk on duty at the time of the incident which is the subject of this lawsuit, and was a witness to the events which led up to the arrest of the plaintiffs. She will testify as to her actions and observations during the course of this incident.

D. Patrick Levantino, 2201 West Davis, Conroe, Texas. Mr. Levantino is a co-owner of the Hilltop Inn and was present at the time the plaintiffs were arrested. He will testify, by deposition if necessary, as to his observations during the course of the incident which is the subject of this lawsuit.

**(11)   EXHIBITS**

**For the Plaintiffs:**

1. Cellblock videotape.

   **Objection:**   Relevance, cumulative evidence, unduly prejudicial.

2. Photograph of plaintiff's Buick.

   **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

3. Photograph of plaintiff's Buick.

   **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

4. Photograph of plaintiff's Buick.

   **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

5. Photograph of plaintiff's Buick.

   **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

6.  Photograph of plaintiff's Buick.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

7.  Photograph of two St. Onge vehicles.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

8.  Photograph of two St. Onge vehicles.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

9.  Photograph of two St. Onge vehicles.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

10.  Photograph of two St. Onge vehicles.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

11.  Photograph of two St. Onge vehicles.

> **Objection:**   Relevance, also unfair prejudice if photograph was not disclosed during discovery process, cumulative evidence.

12.  Newspaper article/photograph concerning plaintiff's business.

> **Objection:**   Relevance, also unfair prejudice if article/photograph was not disclosed during discovery process, cumulative evidence.

**For the Defendants:**

    A. Connecticut State Police Investigative Report #E01-144527

        *Objection*: Hearsay, self-serving.

    B. Statement of Patrick Levantino dated 4/25/01.

        *Objection*: Hearsay.

    C. Statement of Amy Ziegra dated 4/25/01.

        *Objection*: Hearsay.

    D. Photograph of right rear bumper and tail light assembly of Buick bearing Vermont Registration AMX 631.

    E. Photograph of right rear side of blue pickup truck.

    F. Connecticut State Police Investigative Report E01-144543.

        *Objection*: Hearsay, self-serving.

**(12) DEPOSITION TESTIMONY**

**For the Plaintiffs:**

    In response to the defendants' offer of portions of the deposition of Patrick Levantino, the plaintiffs will offer the following:

| PAGE | LINES |
|------|-------|
| 50 | 1-4 |
| 55 | 20-24 |
| 57 | 5-20 |

|                    |                                                                                                      |
|--------------------|------------------------------------------------------------------------------------------------------|
| **Objection:**     | Relevance (FRE 402) and inadmissible character evidence (FRE Rules 402 and 404, 608).                |
| 58                 | 22-23                                                                                                |

## For the Defendants:

The defendants will present the testimony of Patrick Levantino by way of deposition.  Mr. Levantino resides out-of-state in Texas and will likely be unavailable at the time of trial.  The following excerpts from the witness' deposition transcript will be offered:

| **PAGE** | **LINES**    |
|----------|--------------|
| 5        | 11-25        |
| 6        | 1-3, 21-25   |
| 7-28     | All          |

[Plaintiffs object to page 27, lines 20-24, and all of page 28, as hearsay.]

| PAGE | LINES |
|------|-------|
| 29   | 1-3   |

[Objection.  Hearsay.]

| PAGE | LINES |
|------|-------|
| 64   | 10-25 |

[Objection.  Hearsay.]

| PAGE  | LINES |
|-------|-------|
| 65-66 | All   |

[Objection.  Hearsay.]

67                          1-3

[Objection.  Hearsay.]


**(13)   REQUESTS FOR JURY INSTRUCTIONS**

Attached hereto.


**(14)   ANTICIPATED EVIDENTIARY PROBLEMS**

None other than as noted elsewhere herein.


**(15)   PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.


**(16)   TRIAL TIME**

Four days.


**(17)   FURTHER PROCEEDINGS**

None.


**(18)   ELECTION FOR TRIAL BY MAGISTRATE**

No election for trial before a U. S. Magistrate Judge has been agreed upon by

the parties.

THE PLAINTIFFS

BY: _____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
Email: jrw@johnrwilliams.com
Their Attorney


THE DEFENDANTS

BY: _____
STEPHEN R. SARNOSKI ct05129)
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
860.808.5450
Fax: 860.808.5591
Email: stephen.sarnoski@po.state.ct.us
Their Attorney

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSEPH ST. ONGE and　　　　　　　　:
MICHAEL ST. ONGE　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
VS.　　　　　　　　　　　　　　　　　　:　　NO. 3:01CV1506(SRU)
　　　　　　　　　　　　　　　　　　　　:
TROOPER FABIAN (#1302) and　　　　:
TROOPER LALLO (#1402)　　　　　　　:　　NOVEMBER 1, 2003

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

　　1.  This is a lawsuit for civil rights violations brought by citizens against police officers.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

　　2.  Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

　　3.  Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against police officers?  If so, please explain.

　　4.  Have you or anyone close to you ever been employed as a policeman or by any law enforcement agency in any capacity?  If so, please explain.

5.  Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

6.  Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.  Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8.  Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.  Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.  Has anyone here or any close to you ever been employed by an attorney?

11.  Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.  Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13.  Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14.  Have you or anyone close to you ever been the victim of a crime?

15.  Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.  Have you or anyone close to you ever been arrested?

17.  Has anyone here ever witnessed an arrest?

18.  Have you, or has anyone close to you, ever been a party to a lawsuit? If so, please explain.

19.  Where are you employed?

20.  If you are married, is your spouse connected in any way with any police department or other law enforcement agency or is he or she employed by any municipality?

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH ST. ONGE and,                    :        NO. 3:01CV-1506 (SRU)
MICHAEL ST. ONGE,                       :
       *Plaintiffs,*            :

       V.                          :

TROOPER FABIAN, *et al.,*                :
       *Defendants.*            :        OCTOBER 15, 2003

### DEFENDANTS' PROPOSED VOIR DIRE
### QUESTIONS FOR THE JURY

Pursuant to the Court's order dated August 19, 2003, defense counsel respectfully requests that the following questions be asked of prospective jurors.

1. The plaintiffs in this case are Joseph and Michael St. Onge.  To the best of your knowledge, are you or any member of your family acquainted with the plaintiffs in any way?

2. The defendants in this case are Thomas Fabian and Edward Lallo.  Both men are employed as Connecticut State Police troopers by the State of Connecticut, Department of Public Safety, Division of State Police.  To the best of your knowledge, are you or any member of your family acquainted with them?

3. The following individuals may be witnesses in this case:

    a. Patrick Levantino of Conroe, Texas

    b. Amy Ziegra of Groton, Connecticut

To the best of your knowledge, are you or any member of your family acquainted with either of these individuals?

4. To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with a police officer?

5. If your response to question 4 is affirmative, describe the unpleasant experience of which you are aware.

6. Do any of you have an unfavorable opinion about police officers in general?

7. If your response to question 6 is affirmative, describe the nature of the unfavorable opinion that you hold concerning police officers.

8. Have you, a member of your family, or a close friend ever been arrested?

9. Have you read, heard or been exposed to unfavorable comments about the Connecticut State Police Department?

10. A portion of the testimony in this lawsuit will come from State Police officers or their supervisors. Have you or any member of your family ever had a personal experience, heard anything, or read anything which might make it difficult for you to believe their testimony?

11. Do any of you believe, for any reason, that police officers have a tendency to abuse their authority?

12. Have you or a member of your family ever been employed as a police officer?

13. Do any of you believe that the testimony of a policy officer is entitled to greater credibility than that of any other witness, merely by virtue of the fact that the testimony comes from a police officer?

14. Have you or a member of your family ever sued a police officer or the State of Connecticut for any reason?

15. Have you or a member of your family ever been sued by the State of Connecticut or another governmental agency for any reason?

16.  Do you believe that, merely because the defendants have been accused of violating the plaintiff's constitutional rights, they are probably guilty of some wrongdoing?

17.  If you are selected to sit on this jury, the Court will instruct you on the law which you must apply to the facts of this case as you find them to be.  One of the Court's instructions will inform you that the burden of proof for all material facts rests with the plaintiff.  Do you understand that it is the plaintiff's responsibility to prove every fact essential to his case?

18.  Have any of you ever been a guest of the Hilltop Inn on Route 2 in North Stonington, Connecticut?  If so, approximately when did you stay there?

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSEPH ST. ONGE and    :
MICHAEL ST. ONGE     :
             :
VS.           :   NO. 3:01CV1506(SRU)
             :
TROOPER FABIAN (#1302) and  :
TROOPER LALLO (#1402)    :   NOVEMBER 1, 2003

## PLAINTIFFS' REQUESTS TO CHARGE

The plaintiffs respectfully request the Court to charge the jury as follows:

1.  The plaintiffs have brought this lawsuit to obtain redress for what they contend were violations of their rights under the United States Constitution, specifically their right to be free from unreasonable force by police officers. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights. "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, police officers. In this case, the parties have stipulated that the defendants acted under color of law, so you need not concern yourselves with that issue. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v.

13

Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir.

1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

    2. It is not necessary to find that the defendants had any specific intent

to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs.

The plaintiffs are entitled to win their case if the defendants intended the actions

which resulted in the violation of the plaintiffs' rights or if the defendants acted in

reckless disregard of the plaintiffs' rights.  Reckless disregard of the plaintiffs'

rights simply means not caring whether or not those rights were being violated.

[Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod,

871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir.

1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers,

J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of

Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521,

528 (D. Conn. 1993) (Cabranes, J.).]

    3. The testimony of a police officer is entitled to no special or exclusive

sanctity.  An officer who takes the witness stand subjects his testimony to the

same examination and the same tests that any other witness does and in the

case of police officers you should not believe them merely because they are so

employed.  You should recall their demeanor on the stand, their manner of

testifying, the substance of their testimony, and weigh and balance it just as

14

carefully as you would the testimony of any other witness. People employed by the government, including police officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight. [Wright & Havanich, <u>CONN. JURY INSTRUCTIONS</u>, (2d Ed.) §667.]

    4. If you find that either defendant is liable to either plaintiff on any of the grounds advanced in this lawsuit, you should then consider the question of damages. There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages. Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff. These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering. In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendant. Among the elements of injury and harm for which compensation may be awarded are:

    a) The physical harm to the plaintiff during and after the impairment or injury received, including imprisonment and loss of freedom;

    b) The emotional harm to the plaintiff during and after the impairment or injury received, including emotional distress or pain, humiliation, personal

15

indignity, embarrassment, fear, anxiety and/or anguish which the plaintiff has

suffered or may with reasonable certainty be expected to suffer in the future;

    c) Lost wages or earnings;

    d) Attorney fees or other expenses and costs of legal representation;

    e) Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred. Injuries of any kind are

to be fully and fairly compensated if they are proximately caused by the

constitutional violation. You should award damages in such a case to the extent

that the loss or injury can be reasonably quantifiable and not simply on the basis

of the inherent value of the rights violated. The damages you award should be

proportional to the actual loss sustained, whether that loss is physical or mental

or emotional or one of the other types of loss I have previously discussed with

you. [Memphis Community School District v. Stachura, 477 U.S. 299 (1986);

Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d

68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir.

1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v.

Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607,

611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607

A.2d 443 (1992).]

5. You may also decide whether eitherplaintiff is entitled to the award of any punitive damages. In a case like this one, you may consider whether acts or omissions of the defendant or defendants, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct. Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

1) Willful or malicious violation of the constitutional rights of the plaintiff;

2) Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

3) Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages. [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

6. The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing

17

the amount of such damages, the jury acts as the conscience of the community.

In fixing the amount of punitive damages, it is appropriate for the jury to consider

all of the same factors which a trial judge would consider in imposing sentence in

a criminal case.  These factors include the behavior of the defendant at trial and

his or her apparent lack of genuine repentance for the misconduct in question, if

you find such to be the case.  [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987);

Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v.

Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir.

1978).]

     7.  Police officers have an affirmative duty to enforce the law and

preserve the peace.  This includes stopping other police officers from violating

the law.  A police officer may not ignore the duty imposed by his office and fail to

stop other officers who illegally arrest or search a third person in his presence.

Thus, if you find that any police officer, whether or not named as a defendant,

violated any of the civil rights of the plaintiff, and that the defendant did nothing

to prevent it, although in a position to do so, then the defendant himself is liable

for that unlawful act.  [Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); Zapico v.

Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978); Bruner v. Dunaway, 684

F.2d 422 (6th Cir 1982); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).]

8.  When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages.  All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him.  Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  [Prosser, <u>Law of Torts</u>, Section 46, pp. 291-95 (4th Ed. 1971); <u>Gagnon v. Ball</u>, 696 F.2d 17 (2d Cir. 1982).]

9.  Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully.  When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may

consider whether this circumstantial evidence points to a consciousness of wrongdoing.  Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.  Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.  A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.   [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976); Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-21 (1896); United States v. DeAlesandro, 361 F.2d 694, 697-98 (2d Cir. 1966), cert. denied, 385 U.S. 842 (1967).]

10.  If you find that a defendant not only made a false statement or explanation tending to show his innocence, but has made that statement to a law enforcement officer, then you may consider that to be evidence not only of the defendant's consciousness of his own wrongdoing but independent evidence

that in fact he did violate the plaintiff' rights in the manner alleged in the Complaint. False exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force. In other words, if you find that a defendant has knowingly made a false statement to a law enforcement officer, which if true would have tended to establish the innocence of the defendant, you may consider that false statement as independent evidence that the defendant actually committed the constitutional violation alleged in the Complaint. [United States v. Durrani, 835 F.2d 410, 424 (2d Cir. 1987).]

 11. A person, even if he or she is being lawfully arrested, has a constitutional right to have that arrest made in a reasonable manner, without the use of unreasonable force. A police officer is not allowed to behave unreasonably when making even a lawful arrest. The officer may take only such steps and use only such degree of force as a reasonable and trained police officer would believe is required to take an arrested citizen into custody, for the particular charges and under the particular circumstances presented by this case. A police officer may do no more than that. In determining whether a defendant police officer has acted unreasonably in the course of making an otherwise lawful arrest, you should consider all of the facts which you find to have been proven in the case, including the need if any for using the amount of

21

force that you find was involved and the relationship between that force and the extent of the injury which was inflicted upon the plaintiff by the officers. [Graham v. Connor, 490 U.S. 386 (1989); Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989); Finnegan v. Fountain, 915 F.2d 817 (2d Cir. 1990).]

12. In Connecticut, the word nolle is a shortened version of the legal term nolle prosequi, which means literally "I will not prosecute." A nolle prosequi is a formal entry upon the record by the prosecuting attorney, declaring that he or she will not prosecute the case any further. (Black's Law Dictionary 1198 (Rev., 4th Ed. 1968); Cann, Nolle Prosequi in Connecticut, 4 CONN. L. REV. 117, 118 (1971).] The entry of a nolle prosequi terminates the prosecution and requires that the defendant be released from custody. [Conn. Practice Book §727]. In 1781, the Connecticut Supreme Court defined a nolle prosequi in this way: "Where the State's Attorney enters a nolle it is to be intended that there was no cause of action; and it is more conclusive than an acquittal of the Grand Jury." [State v. Stanley, 2 Kirby 25 (1787).]

22

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH ST. ONGE and,        :      NO. 3:01CV-1506 (SRU)
MICHAEL ST. ONGE,         :
      *Plaintiffs,*         :

       V.           :

TROOPER FABIAN, *et al.,*    :
      *Defendants.*      :      OCTOBER 15, 2003

### <u>DEFENDANTS' PROPOSED INSTRUCTIONS</u>
### <u>TO THE JURY</u>

Pursuant to paragraph 10(b)(2) of the Court's final pre-trial order dated August 19, 2003,

the defendants offer the following proposed instructions to the jury:

### I. <u>Instructions on 42 U.S.C. § 1983</u>

#### <u>The Statute</u>

1. The law to be applied in this case is the federal civil rights law which provides a

remedy for individuals (or other entities) who have been deprived of their constitutional (or

statutory) rights under color of state law.  Section 1983 of Title 42 of the United States Code

states:

> Every person who, under color of any statute, ordinance, regulation, custom or
> usage of any State or Territory or the District of Columbia, subjects or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

#### <u>Purpose of Statute</u>

2. Section 1983 creates a form of liability in favor of persons who have been deprived of

rights, privileges and immunities secured to them by the United States Constitution and federal

statutes. Before section 1983 was enacted in 1871, people so injured were not able to sue state

officials or persons acting under color of state law for money damages in federal court. In

enacting the statute, Congress intended to create a remedy as broad as the protection provided by

the Fourteenth Amendment and federal laws.

Section 1983 was enacted to give people a federal remedy enforceable in federal court

because it was feared that adequate protection of federal rights might not be available in state

courts.

*Authority: Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482

(1982); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Mitchum v.*

*Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe v. Pape*, 365 U.S. 167, 81

S.Ct. 473, 5 L.Ed.2d 492 (1961).

### Burden of Proof

3. I shall shortly instruct you on the elements of plaintiff's section 1983 claim, and on the

elements of defendant's affirmative defenses.

The plaintiff has the burden of proving each and every element of his section 1983 claim

by a preponderance of the evidence. If you find that any one of the elements of plaintiff's section

1983 claim has not been proven by a preponderance of the evidence, you must return a verdict

for the defendant.

The defendant has the burden of proving each element of his affirmative defenses. I shall

shortly instruct you on the elements of these defenses. If you find that any one of the elements of

defendant's defenses has not been proven by a preponderance of the evidence, you must

disregard the defense.

*Authority: Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

## Elements of a Section 1983 Claim

4. To establish a claim under section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail.

*Authority: Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

## First Element - Action Under Color of State Law

### Definition

5. The first element of the plaintiff's claim is that the defendant acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state (or territory or the District of Columbia). The term "state" encompasses any political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state.  Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

An actor may misuse power that he possesses by virtue of state law even if his acts violate state law; what is important is that the defendant was clothed with the authority of state law, and that the defendant's actions were made possible by virtue of state law.

*Authority:  Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1361 (1941); *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880).

6.  The act of a state official in pursuit of his personal aims that is not accomplished by virtue of his state authority is not action under color of state law merely because the individual happens to be a state officer.

*Authority:  Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Stengel v. Belcher,* 522 F.2d 438 (6th Cir. 1975); *cert. denied,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed. 269 (1976).

<u>**Second Element - Deprivation of Right**</u>
<u>**Excessive Force**</u>

7.  The second element of the plaintiffs' claim is that they were deprived of a federal right by each of the defendants.  The plaintiffs claim that the acts of the defendants in the course of

arresting them constituted excessive force in violation of the Fourth Amendment to the U.S. Constitution as applied to the States through the Fourteenth Amendment.

Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Thus, police officers are justified in using reasonable physical force upon another person when and to the extent that they reasonably believe it necessary to effect an arrest or defend themselves or a third person from the use or imminent threat of use of physical force while effecting an arrest. On the other hand, a person is not justified in using physical force to resist an arrest regardless of whether the arrest is legal or illegal.

Where an excessive force claim arises in the context of an arrest or investigative stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the alleged intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application also requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The reasonableness inquiry in an excessive force case is an objective one:

the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

You must also keep in mind that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

*Authority:* *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Miller v. Lovett,* 879 F.2d 1066 (2d Cir. 1989); *Esposito v. Buonome,* 647 F.Supp. 580 (D.Conn. 1986); Conn. Gen. Stat. § 53a-22(b); Conn. Gen. Stat. § 53a-23.

## Alternative Courses of Action

8. As I have explained to you, police officers are justified in using reasonable physical force upon another person when and to the extent that they reasonably believe it necessary to effect an arrest or defend themselves or a third person from the use or imminent threat of use of physical force while effecting an arrest. In order to comply with this requirement, a police officer is not required to consider and dismiss the possibility of using any other alternative type or degree of force which may have been available to him at the time he was confronted with the

decision to use force in order apprehend the plaintiffs. The Constitution merely requires that whatever degree of force a police officer chooses to use be objectively reasonable under the totality of the circumstances, not that the officer pursue the most prudent course of conduct as judged by the perfect vision of 20/20 hindsight.

*Authority: Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Brewer v. City of Napa,* 210 F.3d 1093, 1095 (9th Cir. 2000); *Deering v. Reich,* 183 F.3d 645, 652-53 (7th Cir. 1999) (officers not required to use all feasible alternatives to avoid justifiable use of deadly force); *Roy v. City of Lewiston,* 42 F.3d 691, 696 (1st Cir. 1994) (not clear that use of mace or retreat would have been better solution in case in which use of deadly force justified); *Schulz v. Long,* 44 F.3d 643, 649 (8th Cir. 1995) (Fourth Amendment only requires that the officer's actions fall within a range of objective reasonableness); *Plakas v. Drinski,* 19 F.3d 1143, 1148 (7th Cir. 1994) (when deadly force otherwise justified, no obligation to use non-deadly alternatives first); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653, 656 (11th Cir. 1988) (police not required to use minimum of force to apprehend violent, dangerous and threatening suspect); *Estate of Fortunato v. Handler,* 969 F. Supp. 963, 973 (W.D. Pa. 1996) (inquiry is not whether deadly force might have been avoided but rather whether its use was reasonable); *Yellowback v. City of Sioux Falls,* 600 S.W.2d 554, 557 (S.D. 1999) (the inquiry is not performed ... pursuant to a type of "Monday morning quarterback" approach in which analysis rests on whether the officers should have pursued alternative strategies or a lesser degree of force).

**No Right To Resist Arrest**

9.  Under Connecticut law, a citizen possesses no right to resist arrest - even if he

believes that arrest to be unlawful.  In this regard, Connecticut General Statutes § 53a-23

provides as follows:

> **Connecticut General Statutes § 53a-23. Use of physical force to resist
> arrest not justified.**  A person is not justified in using physical force to resist
> an arrest by a reasonably identifiable peace officer, whether such arrest is
> legal or illegal.

*Authority:*  Conn. Gen. Stat. § 53a-23; *State v. Privitera*, 1 Conn.App. 709, 476 A.2d

605, (1984).

**Third Element:  Causation**

**Proximate Cause - Generally**

10.  The third element which plaintiff must prove is that each defendant's acts were a

proximate cause of the injuries allegedly sustained by the plaintiff.  Proximate cause means that

there must be a sufficient causal connection between the act or omission of each defendant and

any injury or damage allegedly sustained by the plaintiff.  An act or omission is a proximate

cause if it was a substantial factor in bringing about or actually causing injury; that is, if the

injury or damage was a reasonably foreseeable consequence of each defendant's act or omission,

it was proximately caused by such act or omission.  In other words, if a defendant's act or

omission had such an effect in producing the injury that reasonable persons would regard it as

being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiff must show by a preponderance of

the evidence that such injury would not have occurred without the conduct of each of the

defendants.  If you find that any defendant has proved, by a preponderance of the evidence, that

the plaintiff complains about an injury which would have occurred even in the absence of that defendant's conduct, you must find that the defendant did not proximately cause the plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supersedes the defendant's act or omission and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant.

Here, you have heard testimony from the defendants that the plaintiffs, Joseph and Michael St. Onge, struggled with them and resisted their efforts to arrest them. You may, but are not required to, infer from this testimony that any injuries suffered by the plaintiffs during the course of their arrests were caused not by any wrongful act on the part of the defendant police officers, but instead by the plaintiffs' own misconduct. If you find that the plaintiffs' injuries were caused by their own misconduct, and not by any excessive force on the part of the police officers, then you must enter your verdict for the defendants.

*Authority:* *Graham v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

## II. Instruction on Qualified Immunity

11. If, and only if, you find that the plaintiff's constitutional rights were violated, you must next consider the defense of qualified immunity which is available to each of the defendants. Qualified immunity is an affirmative defense. This means that the defendants, not the plaintiff, bear the burden of proving the applicability of qualified immunity by a preponderance of the evidence. However, this shifting of the burden of proof from the plaintiff to the defendants applies *only* to the qualified immunity defense.

The shield of qualified immunity protects government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The availability of the defense turns upon the objective legal reasonableness of the allegedly unlawful official action assessed in light of the legal rules that were clearly established at the time it was taken. The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. Under the doctrine of qualified immunity, a defendant will not be liable to the plaintiff if it was objectively reasonable for that defendant to believe that his acts would not violate the plaintiff's rights. In a law enforcement context, the objective reasonableness test is met - and a defendant is entitled to qualified immunity - if police officers of reasonable competence could disagree on the legality of the defendant's actions. Qualified immunity protects all but the

plainly incompetent or those who knowingly violate the law or those who act where the law clearly proscribed the actions taken.

In qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather with the "objective reasonableness" of their chosen course of action given the circumstances confronting them at the scene. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular governmental conduct. It is sometimes difficult for an official to determine how the relevant legal doctrine will apply to the factual situation the official confronts. If the official's mistake as to what the law requires is reasonable, however, the official is entitled to the qualified immunity defense. Thus, the concern of the qualified immunity defense is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. A defendant is entitled to qualified immunity if you find that his actions were objectively reasonable under the totality of the circumstances as known to that defendant at the time he acted – even if you find that the defendant was mistaken as to the actual legal restraints that may have existed at the time he acted.

**Authority:** *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed. 272 (2001); *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998); *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997); *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *Glass v. Mayas,*

984 F.2d 55, 57 (2d Cir. 1993); *Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 695 (1st Cir. 1994).

### III. Instructions on Damages

#### Consider Damages Only if Necessary

12.  If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on any of the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled.  However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

*Authority:  Eulo v. Deval Aerodynamics, Inc.,* 47 F.R.D. 35 (E.D. Pa. 1969) *modified on other grounds,* 430 F.2d 325 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); *Krieger v. Bausch,* 377 F.2d 398 (10th Cir. 1967).

#### Multiple Claims - Multiple Defendants

13.  I have two more cautionary instructions before I define the types of damages you may award, if you find that the plaintiff has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury.  For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him one dollar compensatory damages on each claim - he is only entitled to be made whole again, not to recover more than he lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate him fully for all of the injuries.

With respect to punitive damages, you may make separate awards on each of the federal constitutional claims that is established.

Second, you must be careful to impose any damages that you may award on a claim solely upon the defendant or defendants who you find to be liable on that claim. Although there are four (4) defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well. Each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendants. If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Nevertheless, you might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable. Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of ongoing damages. If you decide that two or more (both) of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.

### Nominal Damages

14. If you return a verdict for the plaintiff on a claim, but find that the plaintiff has failed to prove by a preponderance of the evidence that she has suffered any actual damages on that claim, then you must return an award of damages in some nominal amount such as one dollar.

Nominal damages must be awarded when the plaintiff has been deprived of a constitutional right by the defendant, but has suffered no actual damage as a natural consequence of that deprivation.

**Authority:**  Adapted from 5 Hon. Leonard B. Sand, *et al., Modern Jury Instructions,* Instruction 87-88 (September 1997); *Gibeau v. Nellis,* 18 F.3d 107 (2d Cir 1994).

### Compensatory Damages

15.  The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole - that is, to compensate him for the damage that he has suffered.  (If applicable: Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne.  A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of a defendant's conduct).

I remind you that you may award compensatory damages only for injuries that a plaintiff proved were proximately caused by a defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he is reasonably likely to suffer in the near future.  You may not

award compensatory damages against the defendants for conduct you find to have been merely negligent.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

*Authority:* *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248,, 75 L.Ed. 544 (1931); *Kinty v. United Mine Workers of America,* 544 F.2d 706 (4th Cir. 1976), cert. denied 429 U.S. 1093 (1977); *Northwestern National Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir. 1962); *U.C. Castings Co. v. Knight,* 754 F.2d 1363 (7th Cir. 1985); *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc.,* 600 F.2d 103 (7th Cir. 1979); Connecticut Law of Torts, 3d Ed. § 174; *Markey v. Santangelo,* 195 Conn. 76, 485 A.2d 1305 (1985).

### **Mitigation of Damages**

16. In considering damages to award to the plaintiff, you must determine whether the plaintiff could have done something to lessen the harm that he suffered. The burden is on the defendants to prove, by a preponderance of the evidence, that the plaintiff could have lessened the harm that was done to him, and that he failed to do so. If the defendants convince you that the plaintiff could have reduced the harm done to him but failed to do so, the plaintiff is entitled

only to damages sufficient to compensate him for the injury that he would have suffered if he had taken appropriate action to reduce the harm done to him.

**Authority:**  Adapted from 5 Hon. Leonard B. Sand, *et al., Modern Jury Instructions,* Instructions 87-34 and 87-90 (September 1997).

### Punitive Damages

17.  If you award the plaintiff actual damages, then you may also make him a separate and additional award of exemplary or punitive damages.  You may also make an award of punitive damages even though you find that plaintiff has failed to establish actual damages. Punitive damages are awarded in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, or to deter or prevent a defendant and others like him from committing such conduct in the future.

You may award the plaintiff punitive damages if you find that the acts or omissions of the defendant were done maliciously or wantonly.  An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person.  An act or failure to act is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the injured person.  The plaintiff has the burden of proving, by a preponderance of the evidence, that defendant acted maliciously or wantonly with regard to the plaintiff's rights.

An intent to injure exists when the defendant has a conscious desire to violate federal laws of which he is aware, or when the defendant has a conscious desire to injure plaintiff in a manner he knows to be unlawful.  A conscious desire to perform the physical acts that caused plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that defendant has a conscious desire to violate rights or injure plaintiff unlawfully.

If you find by a preponderance of the evidence that the defendant acted with malicious intent to violate plaintiff's federal rights or unlawfully injure him or if you find that defendant acted with a callous or reckless disregard of the plaintiff's rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

You may not award punitive damages against the defendants for conduct you find to have been merely negligent.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent this defendant from again performing any wrongful acts he may have performed, or whether punitive damages are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those defendant may have committed.

If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which defendant should be

punished for his wrongful conduct, and the degree to which an award of one sum or another will deter a defendant or persons like him from committing wrongful acts in the future.

The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against which damages are awarded. Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amount of such damages.

**Authority:** *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Vasbinder v. Ambach,* 926 F.2d 1333 (2d Cir. 1991); *Abraham v. Pekarski,* 728 F.2d 167 (3d Cir. 1984); *Longoria v. Wilson,* 730 F.2d 300 (5th Cir. 1984); *Lee v. Southern Homes Sites Corp.,* 429 F.2d 290 (5th Cir. 1970); *Walker v. Norris,* 917 F.2d 1449 (6th Cir. 1990); *Bogan v. Stroud,* 958 F.2d 180 (7th Cir. 1992); *Crawford v. Garnier,* 719 F.2d 1317 (7th Cir. 1983); *Cunningham v. City of Overland,* 804 F.2d 1069 (8th Cir. 1986); *Wade v. Haynes,* 663 F.2d 778 (8th Cir. 1981), *aff'd sub nom., Smith v. Wade,* 461 U.S. 30 (1983); *Kennedy v. Los Angeles Police Department,* 901 F.2d 702 (9th Cir. 1990); *Green v. Johnson,* 977 F.2d 1383 (10th Cir. 1992); *Jolivet v. Deland,* 966 F.2d 573 (10th Cir. 1992); *Glover v. Alabama Dept. of Corrections,* 734 F.2d 691 (11th Cir. 1984); Connecticut Law of Torts, 3d Ed., § 174; *Markey v. Santangelo,* 195 Conn. 76, 485 A.2d 1305 (1985).

## IV. **Special Verdict With Interrogatories**

18. When you retire to the jury room to conduct your deliberations, I will ask you to record your findings on a special verdict form which the clerk will provide for you. The special verdict form contains a number of interrogatories to which you are asked to respond either "YES" or "NO." You should carefully follow the instructions contained on the special verdict form, and answer only those interrogatories which are necessary in order for you to conclude your deliberations. On the other hand, you should answer each and every one of the interrogatories on the special verdict form except where the instructions indicate otherwise. Your response to each interrogatory must be unanimous, and must reflect the conscientious judgment of each juror.

Should you need to reach the damages issue, the special verdict form also contains appropriate spaces in which you are asked to record the amount of damages to be awarded. As with your answers to each of the questions contained on the form, your award of damages, if any, must be unanimous and must reflect the conscientious judgment of each juror.

**Authority:** Adapted from Modern Federal Jury Instructions § 78.01, Instruction No. 78-8 (1993).

## **ADDITIONAL REQUESTS**

The parties respectfully request leave to supplement their request for jury instructions after the evidence and prior to the charging conference. This request is made in an abundance of caution and on the theory that the defendants cannot reasonably anticipate how the evidence will be presented and what instructions, in addition to the foregoing and accompanying legal issues, will be necessary to enable the jury to reach their verdict.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH ST. ONGE and | : | |
| MICHAEL ST. ONGE | : | |
| | : | |
| VS. | : | NO. 3:01CV1506(SRU) |
| | : | |
| TROOPER FABIAN (#1302) and | : | |
| TROOPER LALLO (#1402) | : | NOVEMBER 1, 2003 |

### PLAINTIFFS' PROPOSED VERDICT FORM

1. Did the defendant Fabian use unreasonable force against the plaintiff Joseph St. Onge?

Yes_____          No_____

2. Did the defendant Fabian use unreasonable force against the plaintiff Michael St. Onge?

Yes_____          No_____

3. Did the defendant Lallo use unreasonable force against the plaintiff Joseph St. Onge?

Yes_____          No_____

23

4. Did the defendant Lallo use unreasonable force against the plaintiff Michael St. Onge?

          Yes_____          No_____

5. If you have answered "yes" to either Question 1 or Question 3, or both, what amount of money do you find to be fair, just and reasonable to compensate Joseph St. Onge for any injury proximately caused by the use of unreasonable force?

          $_____

6. If you have answered "yes" to either Question 2 or Question 4, or both, what amount of money do you find to be fair, just and reasonable to compensate Michael St. Onge for any injury proximately caused by the use of unreasonable force?

7. If you have answered "yes" to Question 1, what amount of punitive damages, if any, do you award against defendant Fabian and in favor of plaintiff Joseph St. Onge?

          $_____

24

8.  If you have answered "yes" to Question 2, what amount of punitive damages, if any, do you award against defendant Fabian and in favor of plaintiff Michael St. Onge?

$_____

9.  If you have answered "yes" to Question 3, what amount of punitive damages, if any, do you award against defendant Lallo and in favor of plaintiff Joseph St. Onge?

$_____

10.  If you have answered "yes" to Question 4, what amount of punitive damages, if any, do you award against defendant Lallo and in favor of plaintiff Michael St. Onge?

$_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSEPH ST. ONGE and, | : | NO. 3:01CV-1506 (SRU) |
| MICHAEL ST. ONGE, | : | |
| *Plaintiffs,* | : | |
| | | |
| V. | : | |
| | | |
| TROOPER FABIAN, *et al.,* | : | |
| *Defendants.* | : | OCTOBER 15, 2003 |

**DEFENDANTS' PROPOSED**
**SPECIAL VERDICT FORM**
**(Interrogatories)**

**LIABILITY**

    I. **As to the Defendant Thomas Fabian - Section 1983 Claim - Excessive force**:

        A. **Joseph St. Onge:**

    1. Do you find that this defendant unlawfully used unreasonable force in violation of Joseph St. Onge's federal constitutional rights while effecting his arrest on April 24, 2001?

[ ] YES                [ ] NO

    (If you answered "NO" to interrogatory no. 1 above, skip interrogatories no. 2 and 3 in this section and go directly to Section I.B below.)

    2. If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to this plaintiff?

[ ] YES                [ ] NO

    3. If you answered "YES" to interrogatory no. 1 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of this plaintiff, he is nonetheless entitled to qualified immunity for his actions?

[ ] YES                [ ] NO

**B. <u>Michael St. Onge</u>:**

    1. Do you find that this defendant unlawfully used unreasonable force in violation of Michael St. Onge's federal constitutional rights while effecting his arrest on April 24, 2001?

                [ ] YES                    [ ] NO

    (If you answered "NO" to interrogatory no. 1 above, skip interrogatories no. 2 and 3 in this section and go directly to section II below.)

    2. If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to this plaintiff?

                [ ] YES                    [ ] NO

    3. If you answered "YES" to interrogatory no. 1 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of this plaintiff, he is nonetheless entitled to qualified immunity for his actions?

                [ ] YES                    [ ] NO

**II. <u>As to the Defendant Edward Lallo - Section 1983 Claim - Excessive force</u>:**

**A. <u>Joseph St. Onge</u>:**

    1. Do you find that this defendant unlawfully used unreasonable force in violation of Joseph St. Onge's federal constitutional rights while effecting his arrest on April 24, 2001?

                [ ] YES                    [ ] NO

    (If you answered "NO" to interrogatory no. 1 above, skip interrogatories no. 2 and 3 in this section and go directly to Section II.B below.)

    2. If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to this plaintiff?

                [ ] YES                    [ ] NO

    3. If you answered "YES" to interrogatory no. 1 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of this plaintiff, he is nonetheless entitled to qualified immunity for his actions?

                [ ] YES                    [ ] NO

**B. Michael St. Onge:**

1. Do you find that the defendant unlawfully used unreasonable force in violation of Michael St. Onge's federal constitutional rights while effecting his arrest on April 24, 2001?

[ ] YES                    [ ] NO

(If you answered "NO" to interrogatory no. 1 above, skip interrogatories no. 2 and 3 in this section and go directly to section III below.)

2. If you answered "YES" to interrogatory no. 1 above, then do you find that the unlawful conduct on the part of this defendant was the proximate cause of injury to this plaintiff?

[ ] YES                    [ ] NO

3. If you answered "YES" to interrogatory no. 1 above, do you find that, even though this defendant used unreasonable force in effecting the arrest of this plaintiff, he is nonetheless entitled to qualified immunity for his actions?

[ ] YES                    [ ] NO

**DAMAGES**

**III. Compensatory Damages:**

If you answered "YES" to interrogatories no. 1 and 2, but "NO" to interrogatory no. 3 in either section A or B to Part I or Part II above, you have found one or more of the defendants liable to the plaintiffs. You may, therefore, award damages against them.

**A. Joseph St. Onge:**

1. Do you find that the plaintiff, Joseph St. Onge, has proved actual damages suffered as the result of the defendants' wrongdoing?

[ ] YES          [ ] NO

2. If you answered "yes" to interrogatory no. III.A.1, what amount of money in actual damages is fair and just to compensate this plaintiff for the injuries inflicted upon him by the defendants?

$ _____

3. If you answered "no" to interrogatory no. III.A.1, you have found that the plaintiff, Joseph St. Onge, has proved that the defendant, Thomas Fabian or Edward Lallo, or both of

them, violated his constitutional rights, but that he failed to prove actual damages. You must, therefore award nominal damages in an amount not to exceed $1.00. Enter that amount below.

$ _____

**B. Michael St. Onge:**

1. Do you find that the plaintiff, Michael St. Onge, has proved actual damages suffered as the result of the defendants' wrongdoing?

[ ] YES          [ ] NO

2. If you answered "yes" to interrogatory no. III.B.1, what amount of money in actual damages is fair and just to compensate this plaintiff for the injuries inflicted upon him by the defendants?

$ _____

3. If you answered "no" to interrogatory no. III.B.1, you have found that the plaintiff, Michael St. Onge, has proved that the defendant, Thomas Fabian or Edward Lallo, or both of them, violated his constitutional rights, but that he failed to prove actual damages. You must, therefore award nominal damages in an amount not to exceed $1.00. Enter that amount below.

$ _____

**IV. Punitive Damages:**

1. If you awarded either actual or nominal damages to either of the plaintiffs in interrogatories III.A or III.B above, and keeping in mind the Court's instruction on punitive damages, do you find that the defendants should be punished or deterred from future misconduct by an award of punitive damages in addition to that already listed above?

[ ] YES          [ ] NO

2. If your answer to interrogatory no. III.C.1 above is "YES," what amount of punitive damages is fair and just in order to punish each defendant, or to deter him/her from future misconduct?

As to defendant Thomas Fabian:          $ _____

As to defendant Edward Lallo:          $ _____

**Your deliberations are complete.  Please sign and date this form.**

_____                              _____
                Foreperson                                                    Date